### POTTER *v.* TIBBETTS *et al.*

*(Circuit Court, D. Minnesota. September 16, 1890.)*

PRE EMPTION CLAIMS—ENTRIES—LAND-OFFICE RULINGS.
The tenant of a pre-emptor cannot himself pre-empt the same land upon hearing that his landlord's entry has been canceled and vacated by the land-office, when it afterwards turns out that such cancellation was void, and was vacated by the commissioner of the general land-office.

*John B.* and *W. H. Sanborn,* for complainant.

*W. P. Clough, Geo. Gray, Bigelow, Flandrau & Squires, F. M. Dudley, Jas. McNaught,* and *Willis & Willard,* for defendants.

NELSON, J. A suit in equity is brought by the complainant, asserting title to the N. E. ¼ of the N. E. ¼ of section 26, township 47, range 27, located in this district. The legal title is in a corporation designated as the Lake Superior & Puget Sound Land Company, and it is charged that this company holds it in trust for complainant, and he prays for a decree ordering a conveyance of the same, and for other and further relief.

The following are the facts :

It is admitted that the land in controversy has, ever since the survey thereof, been located in the district of lands subject to sale at the United States land-office in St. Cloud, Minn. That said lands were surveyed, and the township plat thereof filed with the commissioner of the general land-office, and a copy filed with the register and receiver at St. Cloud, Minn., May 28, 1872. That the defendant Nathaniel Tibbetts filed his declaratory statement August 22, 1872, for the N. E. ¼ of the N. E. ¼ of section 26, the S. E. ¼ of the S. E. ¼ of section 23, the S. W. ¼ of the S. W. ¼ of section 24, and the N. W. ¼ of the N. W. ¼ of section 25, township 47 N., of range 27, alleging settlement September 13, 1870. That all the above-described lands were and are within the limits of the grant of lands to the Northern Pacific Railroad Company, by the act of congress approved July 2, 1864. That August 13, 1870, the Northern Pacific Railroad Company filed a plat of the general route of its line of railroad, extending opposite and past the land in controversy. That the land was within 20 miles of and on said line of general route. That September 15, 1870, the secretary of the interior ordered withdrawn from sale or location by homestead or pre-emption entry, all odd-numbered sections of said line of general route, and within 20 miles thereof. That said order of withdrawal was received at the local land-office at St. Cloud, Minn., September 24, 1870. That October 12, 1870, said railroad company filed an amended map of general route in the office of the commissioner of the general land-office. That said above-described lands are on said line of general route, as indicated by said amended map and general route, and within 20 miles thereof. That November 7, 1870, the secretary of the interior ordered the withdrawal from sale or location, homestead or pre-emption entry, all the odd-numbered sections on said amended line of general route, and within 20 miles thereof, and that said order of withdrawal was received at the local land-office at St. Cloud, Minn., November 17, 1870. That the Northern Pacific Railroad Company definitely located the line of its said railroad extending opposite to and past the said lands, and within 20 miles thereof, and on the 20th day of November, 1871, duly filed in the office of the commissioner of the general land-office a plat of that portion of said line so definitely located, extending opposite to and past said land hereinbefore described. That prior to January 6, 1873, the said Northern Pacific Railroad Company had located, constructed, and equipped its said railroad along the said line of definite location, through the township and range aforesaid, and fully completed and equipped its said line through said township and range, as provided by said act of congress; and on January 6, 1873, the same was duly accepted by the president of the United States. On the 3d day of September, 1872, the defendant Nathaniel Tibbetts was permitted to prove up his pre-emption settlement and occupation of said land, and that the records of the local land-office and of the general land-office show that the said tracts of land were entered and paid for by the defendant Nathaniel Tibbetts on that day. That on the 7th day of April, 1873, the entry of said tracts of land by Nathaniel Tibbetts, which was

made by Georgia Agricultural College scrip, number 10,054, was canceled and vacated, and that Exhibit C, attached to the answer herein, is a correct copy of the letter of the commissioner of the general land-office, canceling said entry; and that from the decision contained in said exhibit no appeal was taken by the defendant Tibbetts to the secretary of the interior. That the records of the general land-office and local land-office show that the complainant, Warren Potter, filed a declaratory statement, number 4,511, December 6, 1873, for the E. ½ of the N. E. ¼, and the N. ½ of the S. E. ¼ of section 26, township 47 N., of range 27 W., alleging settlement September 6, 1873. That on the 6th day of February, 1874, the commissioner of the general land-office changed the decision made by him in the letter of April 7, 1873, as appears in Exhibit D attached to the answer of the defendant corporations in this action, and permitted the defendant Nathaniel Tibbetts to enter the S. W. ¼ of the S. W. ¼ of section 24 at $2.50 per acre cash; and on the 9th day of April, 1874, the commissioner of the general land-office ordered the whole case of the defendant Nathaniel Tibbetts reopened in and by his letter, (Exhibit E,) attached to the answer of the defendant corporations. That on the 13th day of July, 1874, the complainant, Warren Potter, made an application to make proof of his pre-emption, settlement, and claim, and to enter and pay for the E. ½ of the N. E. ¼, and the N. ½ of the N. E. ¼ of section 26, township 47, range 27; and on the 19th day of December, 1874, the commissioner of the general land-office directed the local officers to order a hearing to determine the rights of the parties to the tract in controversy, namely, the N. E. ¼ of the N. E. ¼ of section 26, township 47, range 27. That on the 7th day of January, 1875, citations were issued by the register and receiver at the St. Cloud office, setting the 12th day of February following for a hearing, at which it appears by the records that both parties appeared, and that the complainant, Warren Potter, offered his proof of pre-emption, settlement, and occupation and improvements. That on the 15th day of June, 1874, the acting commissioner of the general land-office made the ruling and decision in the case which appears in Exhibit H, attached to the answer herein of the defendant corporations. That on December 19, 1874, the commissioner of the general land-office issued the letter of instructions to the register and receiver of the St. Cloud office, a copy of which is hereto attached and marked "Exhibit A." That upon this final hearing the register and receiver of the land-office simply took the testimony offered, and transmitted it to the general land-office, and on the 20th day of October, 1876, the commissioner of the general land-office made the decision, a copy of which is Exhibit I of the answer herein of the defendant corporations; and, upon an appeal to the secretary of the interior, an opinion was rendered, a copy of which is Exhibit K of the answer of the defendant corporations herein.

It is admitted that Exhibits A and B, attached to the defendant corporations' answer, are correct copies of the orders of withdrawal made September 15, 1870, and November 7, 1870, along the lines of general route of the Northern Pacific Railroad Company.

It is admitted by the parties that the cancellation of the entry of the land in controversy by Nathaniel Tibbetts, contained in Exhibit C, was made without any notice whatever to Nathaniel Tibbetts, or any other parties in interest, and that, upon receipt of said exhibit at the local land-office at St. Cloud, a written notice thereof was forthwith sent to Nathaniel Tibbetts by the land-officers at that point, and that the same was received by him.

It is admitted that the following was the rule of practice of the general land-office and the department of the interior in regard to appeals during all the time that proceedings were had in the general land-office and the department of the interior relating to the entry of the land in controversy, namely:

"(33) Any party aggrieved by the rejection of his claim has a right to appeal from the decision of the register and receiver to the commissioner of the general land-office. Such appeal, however, with the reasons therefor, must be filed with the land-officers within thirty days from the day of their decision, accompanied by the rejection papers, if any; also with any argument the party desires to file. These papers will then be forwarded by the district land-officers for review and decision. Their report should set forth the nature of the claim, whether homestead, pre-emption, timber culture, railroad, mineral, swamp, or other state selection, with the name of parties, description of land, number of filing, entry, list of description, and date of hearing. No appeal will be entertained unless sent up through the district land-office. The party may still further appeal from the decision of the commissioner of the general land-office to the secretary of the interior. This appeal must be taken within sixty days after service of notice upon the party. It may be filed with the district land-officers, and by them forwarded, or it may be filed with the commissioner, and must recite the points of exception. If not appealed, the decision is by law made final. (Section 2273 of the Revised Statutes.) After appeal thirty days are usually allowed for the filing of arguments, and the case is then sent to the secretary, whose decision is final and conclusive."

It is admitted, subject to the objection of the complainant, that it is immaterial that Exhibit D, attached to the defendant corporations' answer, is a true and correct copy of the commissioner's decision of February 6, 1874.

It is admitted that on the 13th of March, A. D. 1874, the said defendant Nathaniel Tibbetts, in accordance with said modified decision of the commissioner of the general land-office, entered said S. W. ¼ of the S. W. ¼ of section 24, township 47 N., of range 27 W., and paid for the same in cash.

It is admitted, subject to the objection on the part of complainant, that it is immaterial that Exhibit D is a correct copy of a portion of the records of the general land-office relating to the application of Nathaniel Tibbetts to be allowed to change the alleged date of his settlement in his declaratory statement to August 5, 1870, and to enter the lands described in his declaratory statement. And I find that Exhibit E, attached to the defendant corporations' answer, is a correct copy of the letter of the commissioner of the general land-office, dated April 9, 1874.

It is admitted, subject to the objection on the part of the complainant of immateriality, that Exhibit F, attached to the defendant corporations'

answer, is a correct copy of the letter on file in the general land-office dated May 15, 1874, written by the attorney of the defendant the Northern Pacific Railroad Company. And I find that Exhibit G, attached to the defendant corporations' answer, is a correct copy of the letter of the commissioner dated May 28, 1874.

It is admitted that Exhibit H, attached to the defendant corporations' answer, is a true and correct copy of the letter of the commissioner of the general land-office dated June 15, 1874.

It is admitted that on the 25th day of June, 1874, cash entry was made of all the said lands described in Tibbetts' original declaratory statement, in the name of said Tibbetts by the parties in interest, and that said lands passed to patent under said entry, and that the legal title to the same is now in the defendant the Lake Superior & Puget Sound Land Company.

It is admitted that the complainant is a qualified pre-emptor. And I find that Tibbetts having made an affidavit subsequent to the cancellation of his pre-emption entry by the land commissioner, that his settlement on the land in suit was as early as August 5, 1870, before the map of definite location of the Northern Pacific Railroad had been filed, and before withdrawal by the secretary of the interior of the odd sections had been ordered. I find that the railroad, by its counsel, addressed a communication to the commissioner of the general land-office *inter alia*, saying: "I am authorized to state that the company will interpose no objection to the rehearing of the case, [the Tibbetts claim,] and withdraws from any contest for said land." I also find that on September 4, 1872, when Tibbetts' application to prove up was pending, the company filed a written consent that he be allowed to enter the land without opposition from the company. I find that after the entry of land by Tibbetts on the 11th of September, 1872, he sold and conveyed, with covenants of warranty, for a valuable consideration, the land in controversy to Thomas H. Canfield, which deed was duly recorded, and on December 17, 1872, Canfield sold and conveyed the same land to the defendant the Lake Superior & Puget Sound Land Company. I find that Tibbetts had no talk with any person in relation to the purchase of the land until February, 1871, and this conversation was, in substance, that Canfield came to him and asked if he was the man that claimed this land, and said that if there was a station built on the place he wanted the first chance to buy, a privilege from me. I find that complainant first settled on the land upon which he filed his declaratory statement for pre-emption as a tenant of defendant Tibbetts, and occupied a house belonging to him; and that after the entry of Tibbetts had been canceled, as heretofore stated, he built one of his own, made some improvements, and filed his statement upon being informed that the land was public land, subject to entry by the local land-officers.

*Conclusion.* The cancellation of the Tibbetts' entry was without any authority of law, and his settlement and occupation of the land in controversy did not conflict with the railroad grant. The testimony did not show that Tibbetts had agreed to sell the land to Canfield or the

Lake Superior & Puget Sound Land Company, or did any act which would make his entry fraudulent, and authorize the land department by any proceedings to set aside his pre-emption; nor can the court say that he committed a fraud on the pre-emption law. Canfield or his grantee had no notice of the cancellation, and no opportunity to contest the right of the commissioner of the land-office to do so; and, if the power could have been legally exercised, it is null and void as to them. The complainant could not change his right as lessee to that of pre-emptor, under the circumstances. He was not the first settler on the land, under the pre-emption laws of the United States. Neither Canfield nor the Lake Superior & Puget Sound Land Company are prejudiced by the return of the land scrip to Tibbetts, or any other action of the land department, subsequent to the rights acquired under the deed from Tibbetts and wife to Canfield.

Decree will be entered dismissing the bill.